UNITED STATES of America, Appellee,

v.

Wardell Byron HARRIS, Jr., Appellant.

No. 77–1516.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1977.

Decided Nov. 30, 1977.

Raymond C. Conrad, Jr., Federal Public Defender, Springfield, Mo., for appellant; David R. Freeman, Federal Public Defender, Springfield, Mo., on brief.

Stuart J. Newman, Asst. U. S. Atty., Kansas City, Mo., for appellee; Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on brief.

Before STEPHENSON, Circuit Judge, MARKEY, Chief Judge *, and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

Appellant Wardell Byron Harris, Jr. was convicted in the United States District Court for the Western District of Missouri [1] of transporting a falsely made and forged security in interstate commerce in violation of 18 U.S.C. § 2314 and was sentenced to the custody of the Attorney General for a term of two years. In this appeal, appellant does not challenge the sufficiency of the evidence. He contends, as he did unsuccessfully below, that his indictment should have been dismissed because the government failed to comply with the Interstate Agreement on Detainers when it obtained custody of him from the State of Kansas and thereafter returned him to state custody without having tried him on the federal charge. For the reasons stated herein we hold that the Interstate Agreement on Detainers is inapplicable to the facts of this case and affirm the judgment of conviction.

The essential facts are not in dispute. Appellant was indicted by a federal grand jury on October 27, 1976. At that time, he was being held in Montgomery County, Kansas, in connection with pending state charges. On November 1, 1976, a federal writ of habeas corpus ad prosequendum [2]

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The Honorable William R. Collinson, United States District Court for the Western District of Missouri.

2. 28 U.S.C. § 2241 provides in pertinent part:

was filed and appellant was transferred to the United States District Court in Springfield, Missouri, where his initial appearance and arraignment before a United States Magistrate took place on November 4, 1976.[3] On November 9, 1976, an omnibus hearing was held. Appellant was then returned to the Montgomery County, Kansas, jail.

On or about November 30, 1976, appellant was again transferred to the United States District Court in Springfield, Missouri. Bond was set by the Magistrate and appellant was released pending trial on the federal charges. Appellant's motion to dismiss the indictment for failure to comply with the Interstate Agreement on Detainers Act was denied by the District Court on February 22, 1977, on the ground that the Act did not apply to pretrial detainees.

Two issues are presented to this Court: (1) whether the Interstate Agreement on Detainers applies to pretrial detainees and (2) whether its requirements are applicable to persons whose federal custody was obtained by means of a writ of habeas corpus ad prosequendum.

### I

The Interstate Agreement on Detainers was enacted by Congress on behalf of the United States in 1970 and the United States is a "State" for purposes of the Act. 18 U.S.C. App. § 2, Art. II(a). The Kansas legislature has incorporated the Agreement into its Code. Kan.Stat. ch. 22 art. 44 (1974). The Agreement has two purposes: "(1) to minimize interference with the participation in programs of prisoner treatment and rehabilitation of persons serving sentences in one jurisdiction who have un-

tried charges pending against them in another jurisdiction and (2) to expedite trial of such pending charges." *United States v. Roberts,* 548 F.2d 665, 669 (6th Cir.), *cert. denied,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977). *See United States ex rel. Esola v. Groomes,* 520 F.2d 830, 833–34 (3rd Cir. 1975).

Under Article IV of the Agreement, a prisoner who is serving a term of imprisonment and against whom a detainer has been lodged, may be transferred at the request of a jurisdiction in which a separate, untried indictment, information, or complaint is pending. If the transferred prisoner is returned to the original place of imprisonment before he is tried in connection with the separate pending charges, "the court shall enter an order dismissing the same with prejudice." 18 U.S.C. App. § 2, Art. IV.

On its face, the Agreement appears plainly limited to "a prisoner . . . serving a term of imprisonment. . . ." Article I of the Agreement sets forth its major purposes and policies and provides in part:

The party States find that charges outstanding against *a prisoner,* detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of *persons already incarcerated* in other jurisdictions, produce uncertainties which obstruct *programs of prisoner treatment and rehabilitation.* Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. . . . [emphasis supplied]

---

§ 2241. Power to grant writ

  (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

  .    .    .    .    .

  (c) The writ of habeas corpus shall not extend to a prisoner unless—

  .    .    .    .    .

  (5) It is necessary to bring him into court to testify or for trial.

**3.** On October 29, 1976, a detainer was sent from the United States Marshal's office in Topeka, Kansas. The record does not indicate when the detainer was received by the authorities at Montgomery County. The parties are in agreement that appellant was transferred pursuant to the writ of habeas corpus ad prosequendum filed on November 1, 1976.

Article III begins with the words: "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution. . . . "

■ It was clearly the intent of Congress to afford the prisoner against whom a detainer had been lodged a procedure for testing its substantiality. The prisoner could then gain a greater degree of certainty about his future and the prison authorities would be able to plan more effectively for his rehabilitation and return to society. The legislative history confirms this conclusion. See Sen.Rep. No. 91–1356, 91st Cong., 2d Sess. (1970), U.S.Code Cong. & Admin. News 1970, pp. 4864–65.[4]

■ These objectives have no application to a pretrial detainee who is merely awaiting trial and is not then subject to a term of imprisonment. He has no immediate interest in any institutional treatment or program of rehabilitation.[5] We agree with the conclusion of the Sixth Circuit:

> [T]he Agreement is only concerned that a sentenced prisoner who has entered into the life of the institution to which he has been committed for a term of imprisonment not have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings related to charges in another jurisdiction.

*United States v. Roberts, supra,* 548 F.2d at 670–71. *Accord, United States v. Evans,* 423 F.Supp. 528, 531 (S.D.N.Y.1976).

State courts have similarly refused to extend the Agreement to pretrial detainees. See *Cresong v. Nevil,* 51 A.D.2d 1096, 381 N.Y.S.2d 355 (1976) (Interstate Agreement on Detainers inapplicable to appellant who was being detained pending disposition of

criminal charges and who had not begun to serve a term of imprisonment); *People v. Butcher,* 46 Mich.App. 40, 207 N.W.2d 430, 433 (1973); *Seymour v. State,* 21 Ariz.App. 12, 515 P.2d 39, 40 (1973).

■ When appellant Harris was transferred from the state holding facility in Montgomery County, Kansas, to the United States Court House in Springfield, Missouri, he was merely awaiting trial on the state charges. He had not been convicted or sentenced, and had not begun serving a term of imprisonment. As a pretrial detainee, he was not entitled to be tried by federal authorities before his return to state custody under Article IV of the Agreement. The District Court correctly denied appellant's motion to dismiss the indictment on this ground.

## II

■ Our disposition of the first issue makes it unnecessary to reach the second: whether the requirements of the Interstate Agreement on Detainers are applicable to persons whose federal custody was obtained by means of a writ of habeas corpus ad prosequendum.[6] Even if the Agreement were applicable to pretrial detainees we are equally convinced that the dismissal requirements of the Agreement apply only to detainers and not to federal writs of habeas corpus ad prosequendum.

The circuits are not in agreement on this issue. The Sixth, First, and Fifth Circuits have held that the filing of a writ of habeas corpus ad prosequendum does not constitute a detainer. See *Ridgeway v. United States,* 558 F.2d 357 (6th Cir. 1977); *United States v. Kenaan,* 557 F.2d 912 (1st Cir. 1977); *United States v. Scallion,* 548 F.2d 1168 (5th

---

4. The Senate Report discusses the grave consequences suffered by prisoners who have detainers lodged against them. They are often kept in "close custody" and are ineligible for desirable work assignments. Moreover, they inevitably lose interest in institutional opportunities because they must serve without knowledge of any additional sentences to which they may be subject. Such uncertainty gives rise to behavioral problems. Sen.Rep. No. 91–1356, 91st Cong., 2d Sess. 4866 (1970).

5. The prospective loss of credit for jail time has been held insufficient to transform a pretrial detainee into a prisoner "serving a term of imprisonment." *United States v. Roberts,* 548 F.2d 665, 670 (6th Cir.), *cert. denied,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977).

6. *See* note 2 *supra.*

Cir. 1977). .The Second and Third Circuits have held that the filing of the writ is a detainer and triggers the application of the Agreement. *See United States v. Sorrell,* 562 F.2d 227 (3rd Cir. 1977) (en banc); *United States v. Thompson,* 562 F.2d 232 (3rd Cir. 1977) (en banc); *United States v. Mauro,* 544 F.2d 588 (2d Cir. 1976) *cert. granted,* —— U.S. ——, 98 S.Ct. 53, 54 L.Ed.2d 71 (U.S. Oct. 4, 1977) (No. 76–1596). *But cf. United States v. Chico,* 558 F.2d 1047 (2d Cir. 1977) (Court held the agreement inapplicable when appellants, who were serving state sentences, were taken from state prisons pursuant to writs of ha-beas corpus ad prosequendum to face feder-al charges but were returned within a few hours without being detained in prison else-where).

In a well-reasoned opinion, the First Cir-cuit concluded that Congress did not intend, by adoption of the Interstate Agreement on Detainers Act, to repeal or modify the pro-visions of 28 U.S.C. § 2241 authorizing the production of prisoners "to testify or for trial." *United States v. Kenaan, supra,* 557 F.2d at 917. We agree with the First Cir-cuit's analysis in *Kenaan,* that the tradition-al means of producing prisoners by court order lacks the potential for abuse that state administrative detainers present and that the Agreement was designed to meet. Because we join the majority of the circuits that have considered this issue, appellant must fail in this appeal even if there were facts, not apparent in this record, indicating he was a person whose custody in federal court was obtained while he was "serving a term of imprisonment."

Affirmed.