**UNITED STATES of America**

v.

**Brian PAIGE.**

**C.R. No. 03–69T.**

United States District Court, D. Rhode Island.

Aug. 31, 2004.

Olin W. Thompson, Esq., Providence, RI, for defendant.

Zechariah Chafee, Esq., Donald C. Lockhart, Providence, RI, U.S. Attorneys, for United States of America.

### MEMORANDUM AND ORDER

TORRES, Chief Judge.

### Introduction

Brian Paige has filed a motion to dismiss his indictment on the ground that the Interstate Agreement on Detainers Act ("IAD") was violated when the government presented him for arraignment in United States District Court and, then, returned him to state custody without, first, trying him. For the reasons hereinafter stated, Paige's motion is denied.

### Background

On July 2, 2003, Paige was arraigned in state court for possessing a firearm after having been convicted of a crime of violence. Paige was held at Rhode Island's Adult Correctional Institution ("ACI") in lieu of $100,000 cash bail and for an alleged violation of the terms of his parole on a prior state conviction for assault with a dangerous weapon.

That same day, Agent Michael Payne of the Bureau of Alcohol, Tobacco and Firearms ("ATF") filed a criminal complaint against Paige in this court charging him with possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g). A magistrate judge issued an arrest warrant together with a writ of habeas corpus *ad prosequendum* and the U.S. Marshal's Service filed a detainer with state authorities.

On July 7, 2003, Paige was brought before a federal magistrate judge for an initial appearance and detention hearing. He was ordered detained in the custody of the Attorney General and, then, was returned to the ACI.

Three weeks later, Paige was indicted on the federal charge and, on August 6, 2003, he pled not guilty during his arraignment before a magistrate judge. The magistrate judge reaffirmed the original detention order and Paige, again, was returned to the ACI.

On August 21, 2003, based on Paige's arrest for possessing a firearm, the Rhode Island Parole Board revoked Paige's parole on the previous state conviction. The Parole Board ordered that "[h]e will flatten his sentence."

On September 8, 2003, Paige entered into a plea agreement with respect to the federal firearms charge; and, on October 17, 2003, he appeared in this Court and entered a plea of guilty. After pleading, Paige, again, was returned to the ACI.

Paige claims that his indictment should be dismissed because returning him to state custody without a trial after he was presented for an initial appearance and for arraignment, violated the anti-shuttling provision of the IAD. The government argues, *inter alia*, that Paige waived any claim under the IAD by unconditionally pleading guilty, and by failing to make his motion before trial as required by Fed. R.Crim.P. 12(e). The government also argues that the IAD does not apply because, while at the ACI, Paige was being held as a pretrial detainee and was not serving a "sentence of imprisonment."

### Analysis

I. *The Interstate Agreement on Detainers*

The IAD is a compact among 48 states, the District of Columbia and the

U.S. Government. It enables a participating "state" which is defined to include the federal government,[1] to obtain custody of a prisoner held by another state in order to try that individual on criminal charges. 18 U.S.C.App. 2, § 2; *Reed v. Farley*, 512 U.S. 339, 341, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Custody is obtained by filing a detainer[2] with the state where the prisoner is being held.

The IAD contains an "anti-shuttling provision," which provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.[3]

18 U.S.C.App. 2, § 2, art. IV(e).

■ The purpose of the anti-shuttling provision is to create a good rehabilitative environment for prisoners and to facilitate the speedy disposition of charges pending in other states. *United States v. Currier*, 836 F.2d 11, 13 (1st Cir.1987).

In 1993, the First Circuit held that the "anti-shuttling" provision need not be strictly construed and that a one-day interruption in confinement for arraignment in another state did not violate the IAD. *United States v. Daniels*, 3 F.3d 25, 27 (1st Cir.1993), *abrogated by Alabama v. Boze-*

*man*, 533 U.S. 146, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001). However, in *Alabama v. Bozeman*, the Supreme Court, later, held that the IAD must be strictly interpreted and applied. 533 U.S. at 154–56, 121 S.Ct. 2079. In *Bozeman*, the defendant was serving a federal sentence in Florida federal prison when a detainer was lodged against him by the State of Alabama. Bozeman was taken to Alabama where he spent one night in jail before being arraigned and returned to federal prison in Florida. The Supreme Court found that even a brief interruption in confinement without a trial in the requesting state violates the IAD's "anti-shuttling" provision. *Id.* at 156, 121 S.Ct. 2079. Consequently, it held that the Alabama charges should have been dismissed. *Id.* at 156–57, 121 S.Ct. 2079.

## II. *The Effect of the Guilty Plea*

The government argues that Paige waived his IAD claim by pleading guilty.

■ An unconditional guilty plea waives all claims and defenses except jurisdictional ones. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (holding that when a defendant unconditionally pleads guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"); *United States v. Gonzalez*, 311 F.3d 440, 442 (1st Cir.2002) ("Ordinarily a guilty plea, entered unconditional-

---

1. "State" is defined in the IAD as a state of the United States, the United States of America, any territory of the United States, the District of Columbia and the Commonwealth of Puerto Rico. 18 U.S.C.App. 2, § 2, art. II(a).

2. A detainer is a legal order requiring the state that currently is imprisoning an individual to hold that individual when he has finished serving his sentence so that the individ-

ual can be tried in a different state on a different crime. *Alabama v. Bozeman*, 533 U.S. 146, 148, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001).

3. While Article IV(e) states that the indictment must be dismissed with prejudice, § 9 of the IAD provides that when the United States is the receiving state, an order dismissing the indictment may be with or without prejudice.

ly—that is, without reserving an issue for appeal—establishes guilt and forfeits all objections and defenses."); *United States v. Gonzalez–Arimont*, 268 F.3d 8, 12 (1st Cir.2001) ("by waiving the right to a trial through a guilty plea, the defendant waives all non-jurisdictional defenses"); *United States v. Cordero*, 42 F.3d 697, 699 (1st Cir.1994) ("an unconditional plea effectuates a waiver of any and all independent non-jurisdictional lapses that may have marred the case's progress up to that point").

■ Jurisdiction deals with "the power or authority conferred on a court to decide a given type of case." *Camp v. United States*, 587 F.2d 397, 399 (8th Cir.1978). Accordingly, a "jurisdictional defect" has been defined as "one that calls into doubt the court's power to entertain a matter, not one that merely calls into doubt the sufficiency or quantum of proof relating to guilt." *Cordero*, 42 F.3d at 699.

■ A court lacks "subject matter jurisdiction" over a case when the case is outside of the category of cases the court is authorized to try. *Gonzalez*, 311 F.3d at 442. Generally, an indictment charging a violation of a federal criminal statute is within the subject matter jurisdiction of the district court. *Id.*

■ Those circuits considering the issue have held that claims of IAD violations are not jurisdictional; and, therefore, are waived by the entry of an unconditional guilty plea. *Baxter v. United States*, 966 F.2d 387, 389 (8th Cir.1992) ("By pleading guilty, Baxter waived his right to assert IADA violations."); *United States v. Fulford*, 825 F.2d 3, 10 (3rd Cir.1987) ("entry of a guilty plea acts as a waiver of the provisions of the IADA"); *Kowalak v. United States*, 645 F.2d 534, 537 (6th Cir. 1981) (IAD rights are non-jurisdictional

and waivable by a valid guilty plea); *Camp*, 587 F.2d at 399–400 (rejecting defendant's argument that the IAD is jurisdictional. As the Court explained in *Camp*, the IAD does not go to the power of the court to try a case; but, rather, it deals with the power of the prosecution to proceed against a person charged with a criminal offense. 587 F.2d at 399 n. 4.

■ The First Circuit has not explicitly ruled on whether an unconditional guilty plea waives all claims under the IAD, but it has held that an unconditional guilty plea waives other types of challenges to the charges against a defendant, including those made pursuant to the Speedy Trial Act and the statute of limitations. *Gonzalez–Arimont*, 268 F.3d at 12 ("[A] claim under the Speedy Trial Act is a nonjurisdictional defense that is waived with an unconditional guilty plea."); *United States v. Torres Gonzalez*, 240 F.3d 14, 16 (1st Cir.2001) ("[defendant's] unconditional guilty plea is a waiver of all claims based on the lack of extradition"); *Acevedo–Ramos v. United States*, 961 F.2d 305, 307 (1st Cir.1992) ("[T]he statute of limitations here is a waivable affirmative defense and therefore does not affect a court's jurisdiction.").

Claimed violations of the Speedy Trial Act are especially analogous to claimed violations of the IAD's "anti-shuttling" provision because both statutes call for dismissal of the charges against a defendant if he is not tried within a prescribed time period. *See* 18 U.S.C. § 3162(a)(2) ("If a defendant is not brought to trial within the time limit required ... the information or indictment shall be dismissed on motion of the defendant."). Accordingly, there is no reason to believe that the First Circuit would part company with its sister circuits that have held that IAD

violations are not jurisdictional.[4]

### III. The "Sentence of Imprisonment" Requirement

Even if Paige did not waive his IAD claim, his claim of an IAD violation lacks merit because the IAD is inapplicable to his case. The IAD provides that an "appropriate officer of the jurisdiction in which an untried indictment ... is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a *term of imprisonment* in any party State made available ..." 18 U.S.C.App. 2, § 2, art. IV(a) [emphasis added]. Moreover, the "anti shuttling" provision requires dismissal only "[i]f trial is not had on any indictment ... prior to the prisoner's being returned to the original place of *imprisonment.*" 18 U.S.C.App. 2, § 2, art. IV(e) [emphasis added].

The First Circuit and several other circuits have held that, by its terms, the IAD applies only to prisoners serving a sentence of imprisonment and not to pretrial detainees. *United States v. Hart,* 933 F.2d 80, 84 (1st Cir.1991) (under the plain language of the statute the IAD does not apply to pretrial detainees); *Currier,* 836 F.2d at 16 ("The terms of the [IAD] apply exclusively to prisoners who are actually serving their sentences and not to pretrial detainees."); *United States v. Muniz,* 1 F.3d 1018, 1026 (10th Cir.1993) ("the provisions of the IAD do not apply to pretrial detainees"); *United States v. Muhammad,* 948 F.2d 1449, 1453 (6th Cir.1991) (IAD does not apply to persons imprisoned awaiting disposition of pending charges and who have not been sentenced to a term of imprisonment); *United States v. Reed,* 620 F.2d 709, 711 (9th Cir.1980)

(IAD did not apply to prisoner awaiting trial on federal and state charges and state parole revocation); *United States v. Roberts,* 548 F.2d 665, 670–71 (6th Cir.1977) (IAD only concerns a sentenced prisoner who has entered the institution to which he has been committed, not a prisoner being held because he cannot make bail); *Murray v. District of Columbia,* 826 F.Supp. 4, 8 (D.D.C.1993) (IAD does not apply to prisoners awaiting trial).

The First Circuit also has held that the IAD is inapplicable to prisoners who have been convicted but not yet sentenced, *Currier,* 836 F.2d at 16, and to prisoners sentenced but not yet committed to the institution where they will serve their sentence. *Crooker v. United States,* 814 F.2d 75, 77–78 (1st Cir.1987) (citing *Roberts,* 548 F.2d at 670–71); *see also Murray,* 826 F.Supp. at 8 (IAD does not apply to prisoners convicted but not yet sentenced). Indeed, since the avowed purpose of the IAD's "anti shuttling" provision is to prevent interference with a prisoner's rehabilitative environment; and, since that environment cannot be created until the prisoner is sentenced and assigned to the institution where his sentence will be served, there would be no justification for applying it to prisoners who are not serving sentences of imprisonment.

Here, Paige was not serving any state sentence of imprisonment when he was brought to this Court either for his initial appearance on July 7, 2003, or for his arraignment on August 6, 2003. His parole was not revoked until August 21, 2003, and it was not until that time that he began serving his previously suspended sentence for assault with a dangerous

---

4. Since this Court finds that Paige's guilty plea waived any IAD claims, there is no need to address whether, under Fed.R.Crim.P. 12(e), those claims also were waived by not asserting them before trial.

weapon. Until that time, he was a pretrial and/or pre-revocation hearing detainee.

Paige argues that he began serving a sentence of imprisonment on July 2, 2003, when he was taken into state custody as an alleged parole violator. He argues that prior to that time, he was serving his sentence for assault with a dangerous weapon on parole in the community and that, after his arrest, he was serving a sentence of imprisonment because he was being held not only in lieu of bail on the firearms charge; but, also pending a parole revocation hearing.

Paige's argument is creative but not persuasive. It misapprehends the status of a defendant who is being held pending a parole revocation hearing. Such a defendant is no different than a pretrial detainee. He is not in custody because he has been found to be a violator and sentenced. Rather, he is in custody pending determination of the charge against him and because he is deemed a poor risk for bail or he is unable to post bail.

In addition, Paige's argument is contrary to the overwhelming weight of authority. It is well established that a defendant who is detained pending parole revocation is not a prisoner serving a "sentence of imprisonment" within the meaning of the IAD. *United States v. Saffeels,* 982 F.2d 1199, 1204 (8th Cir.1992), *rev'd on other grounds,* 510 U.S. 801, 114 S.Ct. 41, 126 L.Ed.2d 12 (1993) (IAD did not apply to defendant whose parole revocation was merely pending; defendant was no different than a pretrial detainee); *Fulford,* 825 F.2d at 11 (IAD does not apply to defendant being held in state custody as a probation violator); *Reed,* 620 F.2d at 711 (for purposes of the IAD defendant awaiting parole revocation hearing is not serving a term of imprisonment) *United States v. Collins,* 863 F.Supp. 102, 106 (E.D.N.Y. 1994) (IAD did not apply to prisoner await-

ing parole revocation); *United States v. Tummolo,* 822 F.Supp. 1561, 1563 n. 2 (S.D.Fla.1993) (IAD does not apply to defendant held for parole violation until he begins serving his sentence).

Nor did any IAD violation occur when Paige was returned to the ACI after pleading guilty on September 8, 2003, a point that Paige candidly concedes. Although the IAD's "anti shuttling" provision calls for dismissal if a prisoner is returned before "trial" is "had," a guilty plea is the functional equivalent of a trial because it disposes of the charges against a defendant. Since the IAD seeks to "facilitat[e] the speedy disposition of charges pending against [defendants] in another state," *Currier,* 836 F.2d at 13, it would be ludicrous to hold that the IAD permits detention in the requesting state for pretrial proceedings and a potentially lengthy trial but not for a brief detention that enables the defendant to enter a prompt plea. In fact, at least one circuit has specifically held that there is no IAD violation when a defendant who is serving a sentence of imprisonment is brought to a requesting state, pleads guilty and is returned to the state where he was originally incarcerated. *United States v. Coffman,* 905 F.2d 330, 331–33 (10th Cir.1990); *see also Tollett,* 411 U.S. at 267, 93 S.Ct. 1602 ("a guilty plea represents a break in the chain of events which has preceded it").

### Conclusion

For all of the foregoing reasons, the defendant's motion to dismiss the indictment is denied.

IT IS SO ORDERED.